MEMORANDUM ***
Sampuran Singh, a native and citizen of India, petitions for review of a decision of the Board of Immigration Appeals (“BIA”) affirming the determinations of an immigration judge (“IJ”) that Singh is ineligible for asylum and withholding of removal because he engaged in terrorist related activities. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we affirm.
As we held recently in Khan v. Holder, 584 F.3d 773, 779-80 (9th Cir.2009), this court has jurisdiction to review the BIA’s denial of asylum relief on terrorist grounds. Although there is a limitation on judicial review of denial of asylum relief on these grounds in 8 U.S.C. § 1158(b)(2)(D), the REAL ID Act inserted revised Section 1252(a)(2)(D) into Chapter 8 of the United States Code, thereby restoring this court’s jurisdiction to determine the scope and meaning of the statutory terrorism bar, and to review the BIA’s determination that a petitioner engaged in terrorist activity. See Khan, 584 F.3d at 779-80.
The BIA did not err in determining that Singh engaged in terrorist related activity by providing material support to a terrorist group, and it was thus correct in concluding that Singh was statutorily barred from obtaining relief in the form of asylum, withholding of removal under the INA, and withholding of removal under the Convention Against Torture (“CAT”). See 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (2009). Substantial evidence in the administrative record indicates that Singh provided Sikh militants, who planned to plant bombs dur *224 ing an Indian Independence Day celebration, with material support in the form of food, shelter, and funds. [AR 137]
Singh argues that he acted under duress when he provided this support to the Sikh militants, and that an involuntariness exception to the terrorist bar should be implied from the language of the INA. [Blue Brief at 19] The BIA held, however, that Singh acted voluntarily, and substantial evidence supports its conclusion. Singh had the opportunity to inform the authorities about the militants’ plans during the four-hour period that he spent raising money for the militants, but he chose not to do so. [AR 165] Because Singh acted voluntarily, we need not reach the question of whether there is a statutory exception to the terrorist bar for asylum seekers who involuntarily provide material support to terrorists.
The BIA also did not err in determining that Singh was ineligible for deferral of removal under CAT. In order to qualify for deferral of removal under CAT, an applicant must establish a clear probability that he would be tortured if he were to return to his country of origin. See 8 C.F.R. § 1208.16(c)(2) (2009). Substantial evidence in the administrative record supports the BIA’s determination that Singh failed to establish a clear probability of torture, should he return to India. Singh testified that before entering the United States he was able to reside for a few months in two other Indian cities, New Delhi and Haryana, without persecution or arrest by the authorities. [AR 152-53] State Department reports in the administrative record also indicate that changed circumstances in India since the mid-1990s have enabled former Sikh militants from Punjab to reside safely in other parts of India and to return from overseas and reintegrate into Indian society. [AR 197, 211] There is, therefore, substantial evidence in the record to support the BIA’s determination that it is not more likely than not that Singh would be tortured if he were to return to India, rendering him statutorily ineligible for deferral of removal under CAT.
DENIED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.